**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **GEORGE M. BROWN,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No.  3:14-CV-1890-BH** |
| | ) | |
| **SOCIAL SECURITY ADMINISTRATION,** | ) | |
| **Defendant.** | ) | **Referred to U.S. Magistrate Judge** |

## MEMORANDUM OPINION AND ORDER

Pursuant to the consent of the parties and the order of reassignment dated December 12, 2014, this case has been transferred for the conduct of all further proceedings and the entry of judgment. (doc. 16.)   Before the Court are *Plaintiff's Brief*, filed January 16, 2015 (doc. 18),[1] and *Defendant's Brief*, filed February 17, 2015. (doc. 19.)  Based on the relevant filings, evidence, and applicable law, the Commissioner's decision is **AFFIRMED**.

## I.   BACKGROUND[2]

### A.   Procedural History

George Mikeal Brown (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claims for disability insurance benefits under Titles II of the Social Security Act.  (R. at 18-27.)  On March 21, 2012, he applied for disability and disability insurance benefits, alleging disability beginning August 15, 2011.[3] (R. at 18; doc. 18 at 1.)  His application was initially denied on June 28, 2012, and upon reconsideration on February 20, 2013. (R. at 68-72, 82-84.)  He timely requested a hearing before an Administrative

---

[1]  Pursuant to the *Scheduling Order* (doc. 13) and *Order to Show Cause* (doc. 17), the document filed on January 16, 2015 (doc. 18) is considered *Plaintiff's Brief*.

[2]  The background information comes from the transcript of the administrative proceedings, which is designated as "R."

[3]  Plaintiff's onset date was amended at the hearing from August 15, 2011 to April 21, 2012. (R. at 39.)

Law Judge (ALJ) and personally appeared and testified at a hearing on November 12, 2013. (R. at 32-64, 86-87.) On April 3, 2013, the ALJ issued his decision finding Plaintiff not disabled. (R. at 32-64.) The Appeals Council denied his request for review on March 27, 2014, making the ALJ's decision the final decision of the Commissioner. (R. at 1-6.) Plaintiff timely appealed to the United States District Court pursuant to 42 U.S.C. § 405(g). (doc. 1.)

**B.    Factual History**

### 1.    Age, Education, and Work Experience

Plaintiff was born on March 17, 1960, and he was 53 years old at the time of the hearing before the ALJ. (R. at 40, 222.) He received a high school diploma and completed trade school in brick masonry at Stephen F. Austin. (R. at 42.) He had past relevant work in maintenance, machine repair. (R. at 59.)

### 2.    Medical, Psychological, and Psychiatric Evidence

On June 13, 2011, Plaintiff had a hearing test. (R. at 287.) It showed no change in his hearing from an earlier baseline test, but his hearing status for high pitch sounds was profound in his right ear and moderate in his left ear. (*Id.*) The test also showed that his hearing status for speech range was moderate in his right ear and mild in his left ear. (*Id.*)

On April 21, 2012, Plaintiff went to the emergency room at Parkland Health & Hospital System (Parkland) with pain in his right arm after he tripped and fell on it. (R. at 289, 292.) He rated his pain as 6/10. (R. at 292.) X-rays of his right shoulder identified no fractures or dislocations. (R. at 296.) A physical examination of his right shoulder revealed mild tenderness of the deltoid, but no deformity or muscle atrophy and a full range of motion. (R. at 293.) Plaintiff was discharged that day with a prescription for Indomethacin. (*Id.*)

On June 8, 2012, Plaintiff had two x-rays of his chest taken at North Texas Imaging by Dee L. Martinez, M.D., DABR. (R. at 286.) Dr. Martinez found that both of Plaintiff's lungs were clear and that he did not have acute cardiopulmonary disease, but there was mild cardiomegaly. (*Id.*)

Plaintiff was examined by consulting physician, Kelly Davis, D.O., at the request of the Disability Determination Services (DDS). (R. at 283-85.) Dr. Davis's June 22, 2012 report noted persistent right shoulder pain that traveled down Plaintiff's arm and into his hand. (*Id.*) He had normal (5/5) muscle strength in his left shoulder and mildly decreased muscle strength (4/5) in his right shoulder. (R. at 284.) Additionally, the report noted that Plaintiff could hear Dr. Davis in the exam room only if she was facing him, and that he had difficulty hearing her if she was standing to his right or behind him. (*Id.*)

On July 9, 2012, Plaintiff went to the Bluitt Flowers Health Center (Bluitt Flowers) of Parkland because of ongoing symptoms of pain in his right shoulder and high blood pressure. (R. at 313-39.) Physical examination by Samina Zakiuddin, M.D., failed to reveal any edema or tenderness of the right shoulder. (R. at 318.) Plaintiff had a good range of motion, but reported pain. (*Id.*) He was prescribed Diclofenac Sodium EC and referred to an occupational therapist. (R. at 319.) An MRI study for his right shoulder was ordered. (*Id.*)

Plaintiff met with Katy Budge, OTR, an occupational therapist with Parkland, on August 7, 2012. (R. at 340-69.) He reported that "It hurts when I touch my forearm." (R. at 343.) The occupational therapist reported pain and tingling in Plaintiff's right upper extremity. (*Id.*) He was scheduled for occupational therapy once a week for approximately one month, and returned on August 13, 2012. (R. at 344.) The occupational therapist noted that Plaintiff's right and left upper extremities were within their functional limit, but that he reported pain in his right arm at the end

of its range. (*Id.*)  Plaintiff's right grip strength was 103 lbs, and his left grip strength was 109 lbs. (*Id.*) The occupational therapist instructed Plaintiff to schedule more appointments if necessary. (*Id.*) He did not schedule any other appointments with the occupational therapist, so she discharged him on September 20, 2012. (*Id.*)

On August 30, 2012, Plaintiff met with Loretta Wilson, L.V.N., and Tonya Sawyer-McGee, R.N., ACNP, at Bluitt Flowers. (R. at 370-77.)  He reported hypertension and hearing problems in both ears. (R. at 370.)  His ears appeared normal, and he passed a whisper test. (R. at 376.)  Blood work was ordered and conducted on August 31, 2012. (R. at 375, 400-11, 477-82.)

On September 9, 2012, Matthew James Locker, M.D., and Hythem Adnan Omar, M.D., performed an MRI on Plaintiff's right shoulder. (R. at 412-27, 473-75.)  Dr. Locker found moderate to severe tendinosis of the supraspinatus tendon with mild bursal side fraying of the supraspinatus, a tiny joint sided tear of the infraspinatus tendon, moderate to severe tendinosis of the subscapularis, mild degenerative changes at the acromioclavicular joint with bone marrow edema in the distal clavicle, and mild tendinosis involving the intracapsular segment of the biceps tendon. (R. at 417.)

On September 24, 2012, Plaintiff went to Bluitt Flowers for a diabetes class with Cathy L. Harrison, R.N. (R. at 428-37.)  She noted that Plaintiff both verbalized and demonstrated the techniques used at the class. (R. at 429.)

On November 21, 2012, Plaintiff returned to Bluitt Flowers for a follow-up appointment on his diabetes, to get medications refilled, and for an audiology referral. (R. at 438-64.) Cornelia Tan, M.D., diagnosed Plaintiff with a right rotator cuff tear; neuropathy associated with an endocrine disorder; type 2 or unspecified type diabetes mellitus with neurological manifestations, not stated as uncontrolled; hearing loss; dyslipidemia associated with type 2 diabetes mellitus; and

hypertension. (R. at 445.)

### 3. Hearing Testimony

On November 12, 2013, Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ. (R. at 32-64.)  Plaintiff was represented by an attorney. (R. at 34-35.)

#### a. *Plaintiff's Testimony*

Plaintiff testified that he was 53 years old, 6 feet 2 inches tall, weighed 275 pounds, and lived with his wife. (R. at 40-41.)  He was right-handed. (R. at 40.)  He completed trade school in brick masonry at Stephen F. Austin. (R. at 42.)

Plaintiff's most recent job was a bus driver for a daycare in 2012. (R. at 41.) He was employed briefly with the daycare and earned only $155.00 during that time. (R. at 42.)  His employment was terminated when he fell asleep as he waited for a child. (*Id*.)  Plaintiff testified that his medication caused him to be tired. (R. at 56.)

Before being a bus driver, Plaintiff worked for CMC Steel Fabricators (CMC).[4] (R. at 43.) He was employed by CMC through August 15, 2011.[5] (R. at 38, 43, 209.)  Plaintiff worked as the "maintenance check"[6] for CMC. (R. at 43-44.)  He was laid off when the company reduced the maintenance department following the closure of plants in Texas. (R. at 45.)  Plaintiff received unemployment benefits for a year following his termination. (*Id*.)

Prior to his employment at CMC, Plaintiff was incarcerated from 1989 until 1999. (R. at 44.)

---

[4]  The name of CMC had changed at least three times during his employment, but the company and his work remained the same. (*See* R. at 43.)

[5]  Plaintiff failed to provide a specific start date for his employment with CMC at the hearing. (*See* R. at 43.)  The work history report that he completed on May 9, 2012, stated that he began working there on July 5, 2000. (R. at 209-11.)  The report shows the termination date as August 30, 2011. (*See* R. at 38, 43, 209.)

[6]  Plaintiff separately identified his official job title as "Maintenance Tech" in the work history report that he completed on May 9, 2012. (R. at 209-11.)

He received no vocational training while incarcerated. (*Id.*)

Plaintiff worked in a very noisy environment at CMC. (*Id.*)  Although he wore safety protection, he still developed hearing problems. (R. at 45-46.)  His hearing loss was more pronounced in his right ear. (R. at 48.)  He was able to hear people who spoke in quiet locations, but could not hear people who spoke to him in loud and noisy locations. (R. at 47-48.)

In April 2012, Plaintiff fell and hurt his right shoulder. (R. at 46.)  Examination revealed a small tear and bursitis. (*Id.*)  He went to physical therapy for his shoulder. (R. at 46-47.)  After he completed the physical therapy, Plaintiff regained his full range of motion, but he had pain when he moved his right arm over his head. (R. at 47.)

Plaintiff also developed carpal tunnel syndrome in both of his hands. (R. at 49.)  He experienced problems with his hands while working at CMC. (*Id.*)  However, he was not diagnosed with carpal tunnel syndrom until his employment had been terminated. (*Id.*)  He had persistent pain along the palms and down the front of his arm and wore splints on both of his hands. (R. at 49-50.)

Plaintiff took Gabapentin and Tramadol for his pain. (R. at 51.)  On a scale of one to ten, his average pain was a seven for his shoulder and eight for his hands. (R. at 52.)  Plaintiff also had neuropathy in his feet. (R. at 59.)  His feet throbbed and swelled when he stood for longer than two hours.  (*Id.*)  Out of an eight hour day, he could be on his feet for approximately three hours. (R. at 55-56.)  He took his medications as directed, but they caused him to be tired. (R. at 56.)  Plaintiff thought his medications impacted his ability keep focused on even simple tasks. (R. at 57.)

### b. VE's Testimony

The VE testified that Plaintiff had past relevant work as maintenance, machine repair (638.261-030, heavy, SVP:7). (R. at 59.)  The VE further testified that there were no transferable

skills involved in Plaintiff's past relevant work. (R. at 59-60.)

The ALJ asked the VE to consider a hypothetical person who was restricted to light work and closely approaching advanced age. (R. at 60-61.) The hypothetical person possessed the ability to lift of 20 pounds maximum with only 10 pounds frequently; walk and stand for four to eight hours; sit for up to four hours with the chance to change position at least once every two hours; occasionally reach overhead; and work in at least a relatively quiet basic office environment. (R. at 60-61.) The ALJ then asked the VE to opine whether there were jobs in the national and regional Texas economies for such a hypothetical person. (R. at 61.)

The VE testified that the hypothetical person could work as a routing clerk (222.687-022, light, SVP:2), sorter (222.687-014, light, SVP:2), and photocopy machine operator (207.685-014, light, SVP:2).[7] (R. at 61-62.) In response to a question by the ALJ, the VE testified that unskilled labor had a tolerance of one to two absences per month. (R. at 62-63.)

Plaintiff's attorney asked about the impact of restrictions on the available occupation base for light work and noise level. (R. at 63.) The VE testified that there was "significant erosion," but that the three positions she identified fell within the range of noise level for light work. (*Id.*)

## C.      **ALJ's Findings**

The ALJ issued her decision denying benefits on December 24, 2013. (R. at 18-27.) At step one, she found that Plaintiff had not been engaged in substantial gainful activity since April 21, 2012. (R. at 20.) At step two, she found that Plaintiff had nine severe impairments: tendinosis, a

---

[7]  The VE further testified that the positions have the following employment statistics:
- routing clerk: 1,250 (Texas);  27,200 (U.S.);
- sorter: 870 (Texas); 12,500 (U.S.); and
- photocopy machine operator: 1,460 (Texas); 17,200 (U.S.).

(R. at 61-62.)

mild tear of the right rotator cuff, osteoarthritis of the right AC joint, bilateral carpal tunnel syndrome, hearing loss, obesity, type 2 diabetes, neuropathy, and hypertension. (*Id.*)  At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in the regulations. (R. at 21.)

Before proceeding to step four, the ALJ determined that Plaintiff had the following residual functional capacity: lift and/or carry a maximum of 20 pounds and 10 pounds frequently; stand and/or walk for a total of 4-8 hours in an 8-hour workday; sit for a total of 4 hours in an 8-hour workday; with the option to change positions, if not at will, at least more frequently than the regular breaks given every two hours; and no more than occasional overhead reaching with the right dominant arm.  Additionally, work had to be performed in a quiet environment, restricted to a level 1-3 on a scale of 1-5, with level 3 being the basic office-type environment. (R. at 21-22.)

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (R. at 25.)  At step five, she determined that the Medical-Vocational Rules supported a finding of not disabled because Plaintiff could perform other jobs existing in significant numbers in the regional and national economy, such as a routing clerk, sorter, and photocopy machine operator. (R. at 26-27.)  The ALJ concluded that Plaintiff was not disabled as the term is defined under the Social Security Act, before or after April 21, 2012 through the date of her decision (R. at 27.)

## II.   ANALYSIS

### A.   Legal Standards

#### 1.  Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner

applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id*. Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id*. at 436 and n.1.

**2. Disability Determination**

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  When a claimant's insured status has expired, the claimant "must not only prove" disability, but that the disability existed "prior to the expiration of [his or] her insured status."  *Anthony*, 954 F.2d at 295.  An "impairment which had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability."  *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f) (currently 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2012)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability.  *Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d

10

at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of

the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810

F.2d 1296, 1304 (5th Cir. 1987).  After the Commissioner fulfills this burden, the burden shifts back

to the claimant to show that he cannot perform the alternate work.  *Perez v. Barnhart*, 415 F.3d 457,

461 (5th Cir. 2005).  "A finding that a claimant is disabled or is not disabled at any point in the five-

step review is conclusive and terminates the analysis."  *Loveland v. Bowen*, 813 F.2d 55, 58 (5th Cir.

1987).

## B.    Issue for Review

According to the Commissioner, Plaintiff presents one specific issue for review:

1.  Whether the ALJ properly considered Plaintiff's impairments when formulating
    Plaintiff's residual functional capacity assessment and determining Plaintiff was not
    disabled?[8]

## C.    RFC Assessment

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence

because his well-documented history of medical work related and sensorineural hearing loss, high

blood pressure, torn rotator cuff, diabetes, neuropathy, high cholesterol, carpal tunnel syndrome,

severe depression, and severe anxiety. (doc. 18 at 1.)

Residual functional capacity, or RFC, is defined as the most that a person can still do despite

recognized limitations.  20 C.F.R. § 404.1545(a)(1) (2003).  It "is an assessment of an individual's

ability to do sustained work-related physical and mental activities in a work setting on a regular and

continuing basis."  Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2,

---

[8]  Plaintiff did not specifically identify any issue in his brief.  (*See* doc. 18.)  The Commissioner identified this
specific issue based on the substance of the argument in Plaintiff's brief.  (*See* doc. 19 at 1-2.)  Plaintiff did not file a
reply brief or otherwise object to the Commissioner's characterization of his issue.

1996).  The claimant's RFC should be "based on all of the relevant medical and other evidence," including opinions submitted by treating physicians and other acceptable medical sources, and should account for all of the claimant's "medically determinable impairments . . . including [those] that are not 'severe.'"  *See* 20 C.F.R. § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."  *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).  The ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no allegation of a physical or mental limitation or restriction regarding that capacity, and no information in the record indicates that such a limitation or restriction exists.  *See* SSR 96-8p, 1996 WL 374184, at *1.  The ALJ's RFC decision can be supported by substantial evidence even if she does not specifically discuss all the evidence that supports her decision or all the evidence that she rejected.  *Falco v. Shalala*, 27 F.3d 16, 164 (5th Cir. 1994).  A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record.  *Leggett*, 67 F.3d at 564.

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [Commissioner's] findings."  *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984) (citations omitted).  The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting the" ALJ's decision.  *Id.*  Courts may not reweigh the evidence or substitute their judgment for that of the Commissioner, however, and a "no substantial evidence" finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  *Johnson*, 864 F.2d at 343 (citations omitted).

As noted, the ALJ adopted Plaintiff's amended onset date of April 21, 2012, and found that he had the RFC to perform light, unskilled work subject to certain restrictions. (R. at 21-22, 39.) In determining Plaintiff's RFC during the relevant disability period, the ALJ "considered all symptoms and the extent to which [the] symptoms [could] reasonably be accepted as consistent with the objective medical evidence." (R. at 22.) The ALJ acknowledged Plaintiff's testimony that he was disabled "due to pain and limited range of motion of his right shoulder, bilateral carpal tunnel syndrom, hearing loss, side effects of medication, and neuropathy in his feet"; that he was unable to "lift his right arm above shoulder height due to an injury"; that he was "unable to hear in a noisy environment"; that he wore wrist splints for carpal tunnel syndrome and had pain in both hands that he rated at a level of 7/10 in severity; that his medication caused drowsiness; that he had "throbbing pain in his feet" when he stood or walked for more than 2 hours at a time; that he could stand only for three hours in an eight hour day; that his blood pressure fluctuated; and his feet swelled. (*Id.*) He concluded that based on the medical evidence, Plaintiff's allegations concerning the intensity, persistence and limiting effects of his symptoms were "not fully credible." (R. at 22.)

The ALJ considered important the consultative findings of Dr. Davis's examination on June 22, 2012. (R. at 23-24.) It revealed normal muscle strength (5/5) in his left shoulder and only mildly decreased muscle strength (4/5) in his right shoulder; a normal grip strength (5/5) in both the left and right hands; full range of motion in the left upper extremity; right shoulder flexion of 150/180 degrees and abduction to 140/180 degrees with tenderness of the AC joint into right trapezious; good range of motion in the right elbow, with supination decreased by only 10 degrees; and decreased sharp/dull sensation to the palmer aspect of the right hand and to all digits across dermatomes. (R. at 23.) Dr. Davis also noted that Plaintiff had the greatest difficulty hearing in loud environments

13

with background noise, but that he could hear her in the exam room when she was facing him. (R. at 24.)  Ultimately, the ALJ gave significant weight to the opinions of the state agency medical consultants, but noted that "in view of the claimant's testimony, to the extent credible, and additional evidence presented at the hearing level, it is felt that environmental limitations with regard to noise level, and the option to change positions from sitting to standing are warranted." (R. at 25.)

As discussed, the ALJ's RFC assessment should be based on all of the relevant evidence in the record and should account for all of the claimant's impairments, including those that are non-severe. *See* 20 C.F.R. § 404.1545(a)(3).  The most important piece of medical evidence that Plaintiff cites in support of his request for remand is dated outside of the relevant period.  He notes that, "On April of 2014, Dr. Cornelia Tan file [sic] out a form that I'm disability [sic] of any activity." (doc. 18 at 1.)  Dr. Tan's Medical Release/Physician's Statement, however, was prepared after the hearing before the ALJ, was not part of the record before the Appeals Council, and is not part of the Administrative Record.  (*See* doc. 12; R. 1-670.)  It is attached to Plaintiff's complaint. (doc. 3.) The remaining appointments and medical evidence identified by Plaintiff were reviewed by the ALJ in her decision. (*See* R. at 18-27.)  As the trier of fact, the ALJ was entitled to weigh the evidence against other objective findings, including the opinion evidence available, and the record as a whole.

The ALJ's narrative discussion shows she applied the correct legal standards and considered all of the relevant evidence.  Substantial evidence therefore supports the ALJ's RFC assessment and remand is not required.

### D.    Hearing Reset[9]

Plaintiff also seems to argue that the ALJ erred in failing to reset the hearing because one

---

[9]  Although the Commissioner did not identify this as a separate issue in her characterization of Plaintiff's issue, it is addressed separately because it includes a separate analysis.

of his attorneys did not give the attorney who appeared with him at the hearing all of the evidence to proceed. (doc. 18 at 1.)  Nothing in the transcript reflects that Plaintiff or his attorney requested a reset. (*See* R. 32-64.)  The transcript reflects that the ALJ admitted new documents from Plaintiff into the record at the beginning of the hearing, and no other documents were mentioned. (R. at 35.) Nothing in the record supports this argument, to the extent that it has been asserted.

### III.  CONCLUSION

The Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on this 25th day of September, 2015.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE